## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TAM DANG, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALGREENS CO. d/b/a WALGREENS,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

## CLASS ACTION COMPLAINT

Plaintiff, Tam Dang ("**Plaintiff**"), on behalf of himself and all others similarly situated, brings this class action against Defendant, Walgreens Co. d/b/a Walgreens, ("**Defendant**" or "**Walgreens**"), and alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

### INTRODUCTION

1.      Defendant, Walgreens, offers a variety of over-the-counter and prescription products including transdermal patches, pain relief products, and skin care products. Defendant's over-the-counter lidocaine products include a range of external pain-relieving patches and creams for pain associated with or caused by ailments such as arthritis, backache, muscle strains, sprains, and bruises.

2.      Particularly, Defendant sells, markets, and distributes Pain Relieving Lidocaine Patch (the "**Patch**"), Assorted Sizes Pain Relieving Lidocaine Patches (the "**Assorted Patches**"), and Pain Relieving Cream + Lidocaine (the "**Cream**") (collectively, the "**Products**").

3.      Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

1

4.     When consumers purchase pain-relieving products the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a premium for pain-reliving products that have strong doses.[1]

5.     Defendant takes advantage of this consumer preference for strong doses and/or maximum strength by prominently representing where the one place that every consumer looks when purchasing a product – the packaging and labels themselves. In fact, Defendant touts its representation and claim right on the front of its Products' labels that the Products are "Maximum Strength" lidocaine products.

6.     Consumers including Plaintiff lack the scientific knowledge necessary to determine whether the Products are "Maximum Strength" lidocaine products or to ascertain the true nature of the quality or strength of the Products. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be transparent and properly disclose on the packaging all material information regarding the Products and their dose and strength.

7.     However, Defendant makes this "Maximum Strength" representation in a knowingly false and deceptive manner because Defendant's Products contains only 4% lidocaine; with regard to "patch" products, similar prescription patches manufactured by at least one of Defendant's competitors contains 5% lidocaine; with regard to "cream" products, similar creams manufactured by at least one of Defendant's competitors contain 5% lidocaine and are also available over-the-counter ("OTC") as Defendant's Products are.[2]

---

[1] Defendant's other 4% lidocaine pain reliving patches sell for approximately $0.86 per patch while the 'maximum strength' 4% lidocaine ones sell for $1.17 per patch. *See* https://www.walgreens.com/store/c/walgreens-lidocaine-pain-relief-patches/ID=prod6386698-product (for 'maximum strength' version) and https://www.walgreens.com/store/c/walgreens-lidocaine-patches/ID=300394242-product (for the other version). Plaintiff only uses the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level will be determined later in the case by an expert.
[2] Regarding lidocaine cream products, at least one of Defendant's competitors offers a prescription lidocaine cream with a 5% concentration. *See*

8.      Moreover, Defendant has not only represented that its Products are "Maximum Strength" lidocaine products, but it has also omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

9.      Defendant sells and distributes the Products employing a marketing and advertising campaign centered around claims that appeal to consumers who Defendant knows seek out strong and/or maximum doses of lidocaine to relieve their back pain and aches by touting their Products as "Maximum Strength". As such, reasonable consumers, like Plaintiff, reasonably believe that they are purchasing a Lidocaine product which is at maximum strength, i.e. the highest dosage they can buy.

10.     Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that deceives and harms consumers and the public.

11.     Accordingly, Plaintiff bring this suit on behalf of himself and similarly situated consumers who purchased Defendant's Products. Plaintiff and Class Members were damaged because he would not have purchased (or would not have paid a premium) for Defendant's Products had he known the true facts regarding the Products' "Maximum Strength" representations and omissions.

12.     For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding its "Maximum Strength" claims, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products, for: (i) violations of the state consumer fraud statutes invoked below, (ii)

---

https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=88ca9cba-0c4a-482f-b502-ceefdb1bfbcd&type=display, see also
https://www.drugsdepot.com/store.php/drugsdepot/pd9612367/lidocaine-5-ointment-3544-gm-by-fougera-amp-co (Last Accessed September 16, 2021).

violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (iii) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"); (iv) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"); (v) common law fraud; and (vi) unjust enrichment.

## PARTIES

13.  Plaintiff Tam Dang is a resident and citizen of California residing in El Cerrito, California. He purchased Walgreens' Pain Relieving Lidocaine Patch on numerous occasions during all applicable statute of limitations periods at Walgreens brick and mortar retail locations in California.

14.  Defendant Walgreens is an Illinois corporation, with its principal place of business and headquarters located at 200 Wilmot Rd, Deerfield, IL 60015. Defendant is a resident and citizen of Illinois. Defendant Walgreens markets, distributes, and sells the Pain Relieving Lidocaine Patch and Assorted Sizes Pain Relieving Lidocaine Patches. Defendant Walgreens markets, distributes and sells the aforementioned Products to consumers throughout the United States through their brick-and-mortar locations and online through Defendant's website.

15.  Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

18.  This Court has personal jurisdiction over Defendant in this matter. The acts and omissions giving rise to this action occurred in the state of Illinois. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed,

advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time Defendant was engaged in business activities and headquartered in the state of Illinois.

16.     This Court has subject matter jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

17.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District. Venue is also proper because Defendant is headquartered in this District.

## COMMON FACTUAL ALLEGATIONS

18.     Lidocaine is the active ingredient in Defendant's Products, and it forms the basis for Defendant's "Maximum Strength" misrepresentations on the Products' front labeling, omissions, and overall advertising and marketing campaign.

19.     "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[3]

---

[3]https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776

20.     Lidocaine is commonly used in products such as Defendant's Products to help with body soreness and pain.

A. *Defendant's Products Prominently Feature the "Maximum Strength" Claim*

21.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner nationwide. Defendant sells the Products in all 50 states in their brick-and-mortar stores and through their online store.

22.     Aware of the consumer preference for strong and/or maximum doses of lidocaine in pain-relieving products to alleviate their pain, aches, and soreness, Defendant specifically advertises its Products as "Maximum Strength" lidocaine products.

23.     One attribute that consumers specifically value when purchasing any pain-relieving product is the strength of the dose.[4]

---

[4] Strength of dose is so important that nearly every manufacturer of common pain-relieving products emphasize it. *See* https://www.tylenol.com/products/tylenol-extra-strength-caplets?utm_source=google&utm_medium=cpc&utm_campaign=GO-USA-ENG-PS-Tylenol-BC-EX-RN-Brand-Core+EST&utm_content=Core&utm_term=extra+tylenol&gclid=Cj0KCQjwi7yCBhDJARIsAM WFScPTqYK8J3go53nS0bag4R7EVHQZ7ogd_3MoAMUKWoVzH4FMj8sQj9kaAtbXEALw_w cB&gclsrc=aw.ds&? (Tylenol extra strength); *see also* https://www.bayeraspirin.com/products/bayer-extra-strength-aspirin (extra strength aspirin).

24.     Aware of this consumer preference, Defendant specifically advertises its Products as "MAXIMUM STRENGTH" Lidocaine patches. Below is an image of the Pain Relieving Lidocaine Patch front label[5]:



25.     Below is an image of the Assorted Sizes Pain Relieving Lidocaine Patches:

[5] The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiff and the proposed classes read and relied on. https://www.walgreens.com/store/c/walgreens-lidocaine-pain-relief-patches/ID=prod6386698-product (Pain Relieving Lidocaine Patch); (All listing last accessed January 11, 2022)



26.     Below is an image of the Pain Relieving Cream + Lidocaine:



27.     As shown above, the "MAXIMUM STRENGTH" representation is located on the

very center of the front label of the Products in bold lettering surrounded by a bubble that contrasts

with the background of the packaging, which instantly catches the eye of all reasonable consumers,

including Plaintiff and Class Members.

28. Defendant, however, is well aware that its Products are not a "maximum strength" or maximum strength lidocaine products and deceives trusting reasonable consumers like Plaintiff to believe that they are in fact purchasing such Products while omitting from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

29. Indeed, Defendant's over the counter Products contain only 4% lidocaine while competing prescription lidocaine products contain 5% lidocaine.[6]

30. So, consumers can obtain a stronger dose comparable lidocaine product that is available in the market.

31. As such, Defendant's Products are not "Maximum Strength" lidocaine products as advertised.

32. But rather than accurately advertise its Products through its labeling, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.

33. All reasonable consumers, including Plaintiff, read and relied on Walgreens' "Maximum Strength" representations when purchasing the Products.

34. Defendant's "Maximum Strength" representation was material to Plaintiff's and Class Members' decision to purchase the Product.

35. Defendant's marketing efforts are made in order to – and do in fact – induce consumers to purchase the Products at a premium because consumers believe they are getting lidocaine products with "Maximum Strength."

---

[6] "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter (OTC) varieties available, those contain a lower percentage of lidocaine." *See* https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-patches-may-help-relieve-back-pain.

36.     As shown throughout this Complaint, however, Defendant's Products are ***not*** "Maximum Strength" lidocaine products. Defendant's representations and omissions are false and misleading.

37.     Defendant intended for Plaintiff and Class Members to be deceived or mislead by its misrepresentations and omissions.

38.     Defendant's deceptive and misleading practices proximately caused harm to Plaintiff and the Class.

39.     Plaintiff and Class Members would not have purchased the Products or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## PLAINTIFF'S FACTUAL ALLEGATIONS

40.     Plaintiff Dang is a resident and citizen of El Cerrito, California who purchased Defendant's Product on a recurring basis for many years during the applicable class period. He purchased the Product at brick-and-mortar Walgreens stores in the south San Francisco, California area.

41.     Prior to purchasing Defendant's Product, Plaintiff Dang read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

42.     When purchasing his Product, Plaintiff Dang also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Maximum Strength" lidocaine product. Plaintiff Dang relied on these representations, omissions and warranties in deciding to purchase Defendant's Product.

43.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known these representations were not true.

44.     However, Plaintiff Dang has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

45.     In making his purchase, Plaintiff Dang paid a substantial price premium due to the false and misleading "Maximum Strength" representations and omissions.

46.     However, Plaintiff Dang did not receive the benefit of his bargain because Defendant's Product is not a "Maximum Strength" lidocaine product, and/or because Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

47.     Plaintiff Dang also understood that his Product came with packaging and other materials prepared by Defendant, including representations and warranties regarding the Product being a "Maximum Strength" lidocaine product.

48.     Plaintiff Dang also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

49.     Plaintiff Dang would not have purchased the Defendant's Product if he had been aware that its "Maximum Strength" representations and omissions were not true, or alternatively, he would have paid less for this Product.

50.     Upon information and belief, excluding tax, the Pain Relieving Lidocaine Patch cost approximately $6.99 for six patches, or $1.165 per patch. The price that Plaintiff Dang paid is at a premium compared to other similar products.

## FED. R. CIV. P. 9(b) ALLEGATIONS

51.     Rule 9(b) of the Federal Rules of Civil Procedure provided that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

52. **WHO:** Defendant, Walgreens Co. d/b/a Walgreens, made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Maximum Strength" lidocaine products.

53. **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiff and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

54. **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

55. **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. Defendant's representations are written with bold lettering with white highlight in the case of the Pain Relieving Lidocaine Patches, and are written with bold lettering against a contrasting blue highlight in the case of the Pain Relieving Cream + Lidocaine – both of which instantly catch the eye of all reasonable

consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

56. **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

57. **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action on behalf of himself and the following Classes pursuant to Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3). Specifically, the Classes are defined as:

> **Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, and Washington who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

> **California Subclass**: All persons residing in California who, during the maximum period of time permitted by law, purchased the Products primarily for personal, family or household purposes, and not for resale.

19. Excluded from the Classes are (a) any person who purchased the Products for

resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members, and (f) Class Counsel.

59.     Plaintiff reserves the right to amend the Class definition or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

60.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiff Dang.

61.     Plaintiff seeks only damages and equitable relief on behalf of himself and the Class Members. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by himself and/or the Class Members.

62.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. On information and belief, members of the Class number in at least the thousands. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

63.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the representative Plaintiff is typical in that Plaintiff, like all Class Members, purchased Defendant's Products that were marketed and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, he purchased a product that contained lower strength Lidocaine than was marketed and advertised. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of

fraudulent, deliberate, and negligent misconduct resulting in injury to Plaintiff and all Class Members.

64.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

    a.  Whether Defendant's "Maximum Strength" representations and/or omissions regarding the Products are false and/or misleading;

    b.  Whether Defendant knowingly sold its Products which it knew did not contain "Maximum Strength" lidocaine;

    c.  Whether Defendant engaged in false and/or deceptive advertising;

    d.  Whether Plaintiff and the Class Members did not receive the benefit of their bargain when purchasing the Products;

    e.  Whether Defendant was unjustly enriched by consumers paying a price premium for a less than "Maximum Strength" lidocaine patch;

    f.  Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

    g.  Whether Plaintiff and Class Members have sustained monetary loss and the proper remedy for and measure of that loss;

    h.  Whether Defendant's conduct violated public policy; and

    i.  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

65.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

66.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** Plaintiff and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful

conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

67.     In addition, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive equitable relief with respect to the Class as a whole. In addition, Plaintiff has an intention to purchase the Products in the future if the Products are truthfully labeled and not misleadingly labeled.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF STATE CONSUMER FRAUD ACTS

#### (On Behalf Of The Multi-State Class)

68.     Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

69.     The Consumer Fraud Acts of the States in the Multi-State Class[7] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

---

[7] The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce within the State of Illinois. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS

70.     Defendant intended that Plaintiff and each of the other members of the Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

71.     Had the truth been known, Plaintiff and other Multi-State Class Members would not have purchased Defendant's Product or would not have paid as much for the Product.

72.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Multi-State Class have sustained damages in an amount to be proven at trial.

73.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**

**CALIFORNIA FALSE ADVERTISING LAW**

**Cal. Bus. & Prof. Code § 17500 ("FAL")**

**(On Behalf of the California Subclass)**

74.     Plaintiff brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

75.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

---

505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS. STAT. § 100.18, et seq.).

76.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

77.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to its "Maximum Strength" representations and omissions on the Products' labeling and advertising misled consumers acting reasonably.

78.     Plaintiff and California Subclass Members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased the Defendant's Products in reliance Defendant's false and misleading "Maximum Strength" lidocaine labeling claims as alleged herein.

79.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

80.     Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

81.     As a result, Plaintiff and the California Subclass are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

82.     Plaintiff and the California Subclass were damaged because they would not have purchased (or paid a premium for) Defendant's Products had they known the true facts regarding the "Maximum Strength" lidocaine representations contained on the front label of the Products.

## COUNT III

## <u>VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW</u>

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (On Behalf of the California Subclass)

83. Plaintiff brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

84. Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

85. Defendant violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count II, above.

86. Defendant's conduct, described herein, violated the "unfair" prong of the UCL because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

87. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the FAL.

88. Defendant's conduct with respect to the labeling, advertising, and sale of the Products was unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

89. Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL.

90. A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth herein, Defendant's claims relating strength of the Lidocaine on the Products' labeling were false and the

continued production of the Products despite violating FDA regulations is likely to mislead or deceive the public.

91.     Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) and therefore this conduct was false and misleading and "fraudulent" under the UCL.

92.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

93.     Defendant's conduct caused substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct. Plaintiff and California Subclass Members were damaged because they would not have purchased (or paid a premium for) Defendant's Products had they known the true facts regarding Defendant's "Maximum Strength" representations and omissions.

94.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring Defendant to commence a corrective advertising campaign.

95.     Plaintiff and the California Subclass also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## COUNT IV
## <u>CALIFORNIA CONSUMER LEGAL REMEDIES ACT</u>
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Subclass)

96.     Plaintiff brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

97.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

98. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

99. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

100. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

101. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Class Action Complaint or shortly thereafter with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

102. Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, his reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT V

### FRAUD

### (On Behalf of the Multi-State Class)

103.     Plaintiff brings this Count on behalf of himself and the Multi-State Class against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

104.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

- **WHO:** Defendant, Walgreens Co. d/b/a Walgreens, made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Maximum Strength" lidocaine products.

- **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiff and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

- **WHEN:** Defendants made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

- **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. Defendant's representations are written with bold lettering with white highlight in the case of the Pain Relieving Lidocaine Patches, and are written with bold lettering against a contrasting blue highlight in the case of the Pain Relieving Cream + Lidocaine – both of which instantly catch the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

- **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

- **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are

other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

105.     As alleged herein, Defendant Walgreens made these material "Maximum Strength" representations and omissions in order to induce Plaintiff and Class Members to purchase the Products.

106.     As alleged in detail herein, Walgreens knew the misrepresentations and omissions regarding the Products were false and misleading but nevertheless made such representations and omissions through the marketing, advertising and on the Products' labeling. In reliance on these representations and omissions, Plaintiff and Class Members were induced to, and did, pay monies to purchase the Products.

107.     Had Plaintiff and the Class known the truth about the Products, they would not have purchased the Products.

108.     As a proximate result of the fraudulent conduct of Defendant, Walgreens, Plaintiff and Class Members paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

**COUNT VI**

**<u>UNJUST ENRICHMENT</u>**

**(On Behalf of the Multi-State Class)**

109.     Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

110.     Plaintiff and Class Members conferred benefits on Defendant by purchasing Defendant's Products at a premium price.

111.     Defendant had knowledge of such benefits.

112.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members purchasing its Products. Defendant's retention of these monies under these circumstances is unjust and inequitable because Defendant falsely and misleadingly labeled its Products as "Maximum Strength" lidocaine products when it knew or should have known that those representations were false or misleading.     Defendant's "Maximum Strength" misrepresentations and omissions caused injuries to Plaintiff and Class Members because they would not have purchased (or paid a premium) for Defendant's Products had they known the true facts regarding the "Maximum Strength" claims made on the Products' labels and in Defendant's advertising.

113.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class Members;

b.   For an order declaring that Defendant's conduct violated the statutes referenced herein;

c.   For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d.   For statutory and compensatory damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.  For injunctive relief as pleaded or as the Court may deem proper;

g.  For an order of restitution and all other forms of equitable monetary relief, except

   for monetary relief under the CLRA;

h.  For an order awarding Plaintiff and the Class and Subclass their reasonable

   attorneys' fees and expenses and costs of suit;

i.  Damages in an amount to be determined at trial; and

j.  For such other and further relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 11, 2022                    Respectfully submitted,


*/s/ Kevin Laukaitis*
Kevin Laukaitis
Jonathan Shub
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
Tel: 856-772-7200
Fax: 856-210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

Melissa K. Sims (6231297)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
111 West Jackson Boulevard, Suite 1700
Chicago, IL 60604
Tel: (815) 878-4674
msims@milberg.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301

Tel: (313) 303-3472
nsuciu@milberg.com

Russell Busch (6329500)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (630) 796-0903
Fax: (865) 522-0049
nsuciu@milberg.com
rbusch@milberg.com

Charles E. Schaffer**
David C. Magagna Jr.**
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

\* Admitted to the General Bar
\*\**Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and Putative Class Members*