**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TAM DANG and YASMINE ACOSTA-AGUAYO, on behalf of themselves and all others similarly situated, <br><br>                 Plaintiffs, <br> v. <br><br> WALGREENS CO. d/b/a WALGREENS, <br><br>                 Defendant. | Case No. 1:2022-cv-00177-MMR <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **Demand for Jury Trial** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Tam Dang and Yasmine Acosta-Aguayo ("**Plaintiffs**"), on behalf of themselves and all others similarly situated, bring this First Amended Class Action Complaint against Defendant, Walgreens Co. d/b/a Walgreens, ("**Defendant**" or "**Walgreens**"), and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

**INTRODUCTION**

1.     Defendant, Walgreens, offers a variety of over-the-counter and prescription products including transdermal patches, pain relief products, and skin care products. Defendant's over-the-counter lidocaine products include a range of external pain-relieving patches and creams for pain associated with or caused by ailments such as arthritis, backache, muscle strains, sprains, and bruises.

2.     Particularly, Defendant sells, markets, and distributes Pain Relieving Lidocaine Patch and Assorted Sizes Pain Relieving Lidocaine Patches (the "**Patch**"), and Pain Relieving Cream + Lidocaine (the "**Cream**") (collectively, the "**Products**").

1

3.     Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

4.     When consumers purchase pain-relieving products the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a premium for pain-relieving products that have strong doses.[1]

5.     Defendant takes advantage of this consumer preference for strong doses and/or maximum strength by prominently representing where the one place that every consumer looks when purchasing a product – the packaging and labels themselves. In fact, Defendant touts its representation and claim right on the front of its Products' labels that the Products are "Maximum Strength" lidocaine products.

6.     Consumers including Plaintiffs lack the scientific knowledge necessary to determine whether the Products are "Maximum Strength" lidocaine products or to ascertain the true nature of the quality or strength of the Products. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be transparent and properly disclose on the packaging all material information regarding the Products and their dose and strength.

7.     However, Defendant makes this "Maximum Strength" representation in a knowingly false and deceptive manner because Defendant's Products contains only 4% lidocaine; with regard to "Patch" products, similar prescription patches manufactured by at least

---

[1] Defendant's other 4% lidocaine pain reliving patches sell for approximately $1.60 per patch while the 'maximum strength' 4% lidocaine ones sell for $1.665 per patch. *See* https://www.walgreens.com/store/c/walgreens-lidocaine-pain-relief-patches/ID=prod6386698-product (for 'maximum strength' version) and https://www.walgreens.com/store/c/walgreens-lidocaine-patches/ID=300394242-product (for the other version). Plaintiffs only use the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level will be determined later in the case by an expert.

one of Defendant's competitors contains 5% lidocaine; with regard to "cream" products, similar creams manufactured by at least one of Defendant's competitors contain 5% lidocaine and are also available over-the-counter ("OTC") as Defendant's Products are.[2]

8.      Moreover, Defendant has not only represented that its Products are "Maximum Strength" lidocaine products, but it has also omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

9.      Defendant sells and distributes the Products employing a marketing and advertising campaign centered around claims that appeal to consumers who Defendant knows seek out strong and/or maximum doses of lidocaine to relieve their back pain and aches by touting their Products as "Maximum Strength". As such, reasonable consumers, like Plaintiffs, reasonably believe that they are purchasing a Lidocaine product which is at maximum strength, i.e. the highest dosage they can buy.

10.     Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that deceives and harms consumers and the public.

11.     Accordingly, Plaintiffs bring this suit on behalf of themselves and similarly situated consumers who purchased Defendant's Products. Plaintiffs and Class Members were damaged because they would not have purchased (or would not have paid a premium) for

---

[2] Regarding lidocaine cream products, at least one of Defendant's competitors offers a prescription lidocaine cream with a 5% concentration. *See* https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=88ca9cba-0c4a-482f-b502-ceefdb1bfbcd&type=display, see also https://www.drugsdepot.com/store.php/drugsdepot/pd9612367/lidocaine-5-ointment-3544-gm-by-fougera-amp-co (Last Accessed April 19, 2022).

Defendant's Products had they known the true facts regarding the Products' "Maximum Strength" representations and omissions.

12.     For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding its "Maximum Strength" claims, Plaintiffs seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products under the Causes of Action listed herein.

## PARTIES

13.     Plaintiff Tam Dang is a resident and citizen of California residing in El Cerrito, California. He purchased Walgreens' Pain Relieving Lidocaine Patch on numerous occasions between January 2019 and January 2021 at Walgreens brick and mortar retail locations in South San Francisco, California and San Bruno, California. He paid approximately $9.99 (plus tax) for six patches, or $1.665 per patch.

14.     Plaintiff Yasmine Acosta-Aguayo is a resident and citizen of Illinois residing in Chicago, Illinois. She purchased Walgreens' Pain Relieving Lidocaine Patch multiple times a year during all applicable statute of limitations periods. Most recently Plaintiff Acosta-Aguayo purchased the Product in a box of six patches for $10.73 (including tax) from a Walgreens retail location in Park Ridge, Illinois on January 4, 2022.

15.     Defendant Walgreens is an Illinois corporation, with its principal place of business and headquarters located at 200 Wilmot Rd, Deerfield, IL 60015. Defendant is a resident and citizen of Illinois. Defendant Walgreens markets, distributes, and sells the Pain Relieving Lidocaine Patch and Assorted Sizes Pain Relieving Lidocaine Patches. Defendant Walgreens markets, distributes and sells the aforementioned Products to consumers throughout the United States through its brick-and-mortar locations and online through Defendant's website.

16.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

18.     This Court has personal jurisdiction over Defendant in this matter. Defendant is headquartered in the state of Illinois, and the acts and omissions giving rise to this action occurred in the state of Illinois. Defendant has been afforded due process because it is headquartered and it "at home" in the state of Illinois and has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time Defendant was engaged in business activities and headquartered in the state of Illinois.

17.     This Court has subject matter jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant

to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District. Venue is also proper because Defendant is headquartered in this District.

## COMMON FACTUAL ALLEGATIONS

19.     Lidocaine is the active ingredient in Defendant's Products, and it forms the basis for Defendant's "Maximum Strength" misrepresentations on the Products' front labeling, omissions, and overall advertising and marketing campaign.

20.     "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[3]

21.     Lidocaine is commonly used in products such as Defendant's Products to help with body soreness and pain.

### A.   *Defendant's Products Prominently Feature the "Maximum Strength" Claim*

22.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner nationwide. Defendant sells the Products in all 50 states in their brick-and-mortar stores and through their online store.

23.     Aware of the consumer preference for strong and/or maximum doses of lidocaine in pain-relieving products to alleviate their pain, aches, and soreness, Defendant specifically advertises its Products as "Maximum Strength" lidocaine products.

---

[3] https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776 (Last Accessed April 19, 2022).

24.     One attribute that consumers specifically value when purchasing any pain-relieving product is the strength of the dose.[4]

25.     Aware of this consumer preference, Defendant specifically advertises its Products as "MAXIMUM STRENGTH" Lidocaine patches. Below is an image of the Pain Relieving Lidocaine Patch front label[5]:



---

[4] Strength of dose is so important that nearly every manufacturer of common pain-relieving products emphasize it. *See* https://www.tylenol.com/products/tylenol-extra-strength-caplets?utm_source=google&utm_medium=cpc&utm_campaign=GO-USA-ENG-PS-Tylenol-BC-EX-RN-Brand-Core+EST&utm_content=Core&utm_term=extra+tylenol&gclid=Cj0KCQjwi7yCBhDJARIsAM WFScPTqYK8J3go53nS0bag4R7EVHQZ7ogd_3MoAMUKWoVzH4FMj8sQj9kaAtbXEALw_ wcB&gclsrc=aw.ds&? (Tylenol extra strength); *see also* https://www.bayeraspirin.com/products/bayer-extra-strength-aspirin (extra strength aspirin).
[5] The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiffs and the proposed classes read and relied on. https://www.walgreens.com/store/c/walgreens-lidocaine-pain-relief-patches/ID=prod6386698-product (Pain Relieving Lidocaine Patch); (All listings last accessed April 19, 2022).

26.     Below is an image of the Assorted Sizes Pain Relieving Lidocaine Patches:



27.     Below is an image of the Pain Relieving Cream + Lidocaine:



28.     As shown above, the "MAXIMUM STRENGTH" representation is located on the very center of the front label of the Products in bold lettering surrounded by a bubble that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiffs and Class Members.

29.     Defendant, however, is well aware that its Products are not of a "maximum strength" or are maximum strength lidocaine products and deceives trusting reasonable consumers like Plaintiffs to believe that they are in fact purchasing such Products while omitting from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

30.      Indeed, Defendant's over the counter Products contain only 4% lidocaine while competing prescription lidocaine products contain 5% lidocaine.[6]

31.     So, consumers can obtain a stronger dose comparable lidocaine product that is available in the market.

32.     As such, Defendant's Products are not "Maximum Strength" lidocaine products as advertised.

33.     But rather than accurately advertise its Products through its labeling, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.

34.     All reasonable consumers, including Plaintiffs, read and relied on Walgreens' "Maximum Strength" representations when purchasing the Products.

---

[6] "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter (OTC) varieties available, those contain a lower percentage of lidocaine." *See* https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-patches-may-help-relieve-back-pain.

9

35. Defendant's "Maximum Strength" representation was material to Plaintiff's and Class Members' decision to purchase the Product.

36. Defendant's marketing efforts are made in order to – and do in fact – induce consumers to purchase the Products at a premium because consumers believe they are getting lidocaine products with "Maximum Strength."

37. As shown throughout this Complaint, however, Defendant's Products are ***not*** "Maximum Strength" lidocaine products. Defendant's representations and omissions are false and misleading.

38. Defendant intended for Plaintiffs and Class Members to be deceived or mislead by its misrepresentations and omissions.

39. Defendant's deceptive and misleading practices proximately caused harm to Plaintiffs and the Class.

40. Plaintiffs and Class Members would not have purchased the Products or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Plaintiff Dang

41. Plaintiff Dang is a resident and citizen of El Cerrito, California who purchased Defendant's Product on a near weekly basis between January 2019 and January 2021. He purchased the Product at brick-and-mortar Walgreens stores in South San Francisco, California and San Bruno, California.

42.     Prior to purchasing Defendant's Product, Plaintiff Dang read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

43.     When purchasing his Product, Plaintiff Dang also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Maximum Strength" lidocaine product. Plaintiff Dang relied on these representations, omissions and warranties in deciding to purchase Defendant's Product.

44.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known these representations were not true. As a result, Plaintiff Dang was misled in purchasing the Product based on the "Maximum Strength" representations and omissions.

45.     However, Plaintiff Dang has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

46.     In making his purchase, Plaintiff Dang paid a substantial price premium due to the false and misleading "Maximum Strength" representations and omissions.

47.     However, Plaintiff Dang did not receive the benefit of his bargain because Defendant's Product is not a "Maximum Strength" lidocaine product, and/or because Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

48.     Plaintiff Dang also understood that his Product came with packaging and other materials prepared by Defendant, including representations and warranties regarding the Product being a "Maximum Strength" lidocaine product.

49.     Plaintiff Dang also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

50.     Plaintiff Dang would not have purchased the Defendant's Product if he had been aware that its "Maximum Strength" representations and omissions were not true, or alternatively, he would have paid less for this Product.

51.     Upon information and belief, excluding tax, the Pain Relieving Lidocaine Patch cost approximately $9.99 (plus tax) for six patches, or $1.665 per patch. The price that Plaintiff Dang paid is at a premium compared to other similar products.

**Plaintiff Acosta-Aguayo**

52.     Plaintiff Acosta-Aguayo is a resident and citizen of Chicago, Illinois who purchased Defendant's Product on a recurring basis for many years during the applicable class period. She purchased the Product at a brick-and-mortar Walgreens store in Park Ridge, Illinois and through the Walgreens app. Most recently, Plaintiff Acosta-Aguayo purchased the Product at a Walgreens in Park Ridge, IL on January 4, 2022.

53.     Prior to purchasing Defendant's Product, Plaintiff Acosta-Aguayo read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

54.     When purchasing her Product, Plaintiff Acosta-Aguayo also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Maximum Strength" lidocaine product. Plaintiff Acosta-Aguayo relied on these representations, omissions and warranties in deciding to purchase Defendant's Product.

55.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true. As a result, Plaintiff Acosta-Aguayo was misled in purchasing the Product based on the "Maximum Strength" representations and omissions.

56.     However, Plaintiff Acosta-Aguayo has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

57.     In making her purchase, Plaintiff Acosta-Aguayo paid a substantial price premium due to the false and misleading "Maximum Strength" representations and omissions.

58.     However, Plaintiff Acosta-Aguayo did not receive the benefit of her bargain because Defendant's Product is not a "Maximum Strength" lidocaine product, and/or because Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

59.     Plaintiff Acosta-Aguayo also understood that her Product came with packaging and other materials prepared by Defendant, including representations and warranties regarding the Product being a "Maximum Strength" lidocaine product.

60.     Plaintiff Acosta-Aguayo also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

61.     Plaintiff Acosta-Aguayo would not have purchased the Defendant's Product if her had been aware that its "Maximum Strength" representations and omissions were not true, or alternatively, she would have paid less for this Product.

62.     Upon information and belief, excluding tax, the Pain Relieving Lidocaine Patch cost approximately $9.99 (plus tax) for six patches, or $1.665 per patch. The price that Plaintiff Acosta-Aguayo paid is at a premium compared to other similar products.

## FED. R. CIV. P. 9(b) ALLEGATIONS

63.     Rule 9(b) of the Federal Rules of Civil Procedure provided that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

64.     **WHO:** Defendant, Walgreens Co. d/b/a Walgreens, made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Maximum Strength" lidocaine products.

65.     **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiffs and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

66.     **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

67. **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. Defendant's representations are written with bold lettering with white highlight in the case of the Pain Relieving Lidocaine Patches, and are written with bold lettering against a contrasting blue highlight in the case of the Pain Relieving Cream + Lidocaine – both of which instantly catch the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

68. **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiffs and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

69. **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

15

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this action on behalf of themselves and the following Classes

pursuant to Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3). Specifically, the Classes are defined as:

> **Nationwide Class**: All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, and Washington who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.[7]

> **Illinois Subclass:** All persons residing in Illinois who, during the maximum period of time permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.

> **California Subclass**: All persons residing in California who, during the maximum period of time permitted by law, purchased the Products primarily for personal, family or household purposes, and not for resale.

19.     Excluded from the Classes are (a) any person who purchased the Products for

resale and not for personal or household use, (b) any person who signed a release of any

Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate

family members of the officers, directors or employees, of any Defendant or any entity in which

---

[7] The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce within the State of Illinois. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS. STAT. § 100.18, et seq.).

a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members, and (f) Class Counsel.

71. Plaintiffs reserve the right to amend the Class definition or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

72. As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiff Dang and Plaintiff Acosta-Aguayo.

73. Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by themselves and/or the Class Members.

74. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. On information and belief, members of the Class number in at least the thousands. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

75. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased Defendant's Products that were marketed and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they purchased a product that contained lower strength Lidocaine than was marketed and advertised. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a

17

common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to Plaintiffs and all Class Members.

76. **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

a. Whether Defendant's "Maximum Strength" representations and/or omissions regarding the Products are false and/or misleading;

b. Whether Defendant knowingly sold its Products which it knew did not contain "Maximum Strength" lidocaine;

c. Whether Defendant engaged in false and/or deceptive advertising;

d. Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

e. Whether Defendant was unjustly enriched by consumers paying a price premium for a less than "Maximum Strength" lidocaine patch;

f. Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

g. Whether Plaintiffs and Class Members have sustained monetary loss and the proper remedy for and measure of that loss;

h. Whether Defendant's conduct violated public policy; and

i. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

77. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

78.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** Plaintiffs and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

79.     In addition, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive equitable relief with respect to the Class as a whole. In addition, Plaintiffs have an intention to purchase the Products in the future if the Products are truthfully labeled and not misleadingly labeled.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTIES
**(On Behalf Of The Nationwide Class)**

80.     Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

81.     Plaintiffs bring this Count on behalf of themselves and the Nationwide Class.

82.     Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the

basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description. *See*, *e.g.*, Cal. Com. Code § 2313(1)(a)-(b) and 810 ICLS 5/2-313(1)(a)-(b).

83. Defendant, as the marketer, distributor and/or seller, expressly warranted that the Product was a "Maximum Strength" lidocaine product.

84. Plaintiffs formed a contract with Defendant at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact that Defendant makes through an extensive, uniform, nationwide marketing campaign, and on its product labels. Among other affirmations of fact and promises described herein, Defendant represents that the Product is a "Maximum Strength" lidocaine product.

85. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and Class Members regarding the Products became the basis of the bargain between Defendant and Plaintiffs and the Classes, thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions.

86. Contrary to Defendant's affirmations of fact and promises, the Product is not a "Maximum Strength" lidocaine product. Defendant breached the express warranties and/or contract obligations by placing the Products into the stream of commerce and selling the Products to consumers, when the Product is not a "Maximum Strength" lidocaine product, because other comparable lidocaine products exist in the market that contain more lidocaine than Defendant's product.

87. As such, Defendant's Products do not conform to the express warranties because the representations are false or misleading.

88.   At all times relevant herein, Defendant was aware, or should have been aware, of the misrepresentations regarding the Products.

89.   Defendant made the "Maximum Strength" representation with the intention that Plaintiffs and Class members would rely on the "Maximum Strength" representation. Plaintiffs and Class members did, in fact, rely on Defendant's "Maximum Strength" representation when deciding to purchase the Products.

90.   Where required, Defendant's affirmations of fact and promises were material to Plaintiffs and Class Members decisions to purchase the Products.

91.   All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or Class Members.

92.   Defendant received direct electronically mailed notice from Plaintiffs' counsel related to the claims at issue in this First Amended Complaint, and specifically Defendant's breaches of its warranties. Specifically, as early as January 11, 2022, the original Complaint filed in this matter operated as sufficient notice to Defendant to inform it of its breaches of express warranties on behalf of Plaintiff Dang.  Moreover, Plaintiffs' counsel served to Defendant's counsel with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class Members: via UPS on January 12, 2022 by Plaintiff Dang; via email on March 31, 2022 by Plaintiff Acosta-Aguayo.

93.   Defendant's counsel acknowledged receipt of Plaintiffs' pre-suit notice letter by responding to Plaintiffs' counsel's email(s) regarding service of the pre-suit notice letter. However, Defendant has failed to remedy its breach.

94.   Defendant also has notice of the conduct related to its breach of warranties by way of the lawsuit that was filed: *Dang v. Walgreens Co. d/b/a Walgreens*, 1:22-cv-00177 (N.D. Ill.)

(filed on January 11, 2022) and *Stevens v. Walgreen, Co.,* 1:21-cv-10603 (S.D. NY) (filed on December 11, 2021.

95.     As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and Class Members have been damaged because they did not receive the Product as specifically warranted by Defendant. Plaintiffs and Class Members did not receive the benefit of the bargain and suffered damages by purchasing the misrepresented Product.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (On Behalf Of The Nationwide Class)

96.     Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

97.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class.

98.     Each of the states represented by Plaintiffs has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." See Cal. Comm. Code § 2314 (California); and 810 Ill. Comp. Stat. 5/2-314 (Illinois).

99.     Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations and omissions to Plaintiffs and the Class that, among other things, the Products were labeled as being "Maximum Strength" lidocaine products.

100.     Plaintiffs and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

101.     Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was, in the sale to Plaintiffs and other consumers, an implied warranty that those goods were merchantable.

102.    However, Defendant breached that implied warranty in that the Products are inaccurately labeled as being a "Maximum Strength" lidocaine product when it is not because other comparable lidocaine products exist in the market that contain more lidocaine than Defendant's Products.

103.    At all times relevant herein, Defendant was aware, or should have been aware, of the implied warranties regarding the Products.

104.    Defendant made the "Maximum Strength" representations and omissions with the intention that Plaintiffs and Class Members would rely on the "Maximum Strength" representations and omissions. Plaintiffs and Class Members did, in fact, rely on Defendant's "Maximum Strength" representations and omissions when deciding to purchase the Products.

105.    Where required, Defendant's implied warranties were material to Plaintiffs and Class Members decisions to purchase the Products.

106.    Where required Plaintiffs are in privity with Defendant because Plaintiffs purchased the Products directly from Defendant.

107.    All conditions precedent to Defendant's liability for its breach of implied warranties have been performed by Plaintiffs and Class Members.

108.    Defendant received direct electronically mailed notice from Plaintiffs related to the claims at issue in this First Amended Complaint, and specifically Defendant's breaches of its implied warranties. Specifically, as early as January 11, 2022, the original Complaint filed in this matter operated as sufficient notice to Defendant to inform it of its breaches of implied warranties on behalf of Plaintiff Dang. Moreover, Plaintiffs' counsel served Defendant's counsel with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class Members: via UPS on January 12, 2022 by Plaintiff Dang; via email on March 31, 2022 by Plaintiff Acosta-Aguayo.

23

109. Defendant's counsel acknowledged receipt of Plaintiffs' pre-suit notice letter by responding to Plaintiffs' counsel's email(s) regarding service of the pre-suit notice letters. However, Defendant has failed to remedy its breach.

110. Defendant also has notice of the conduct related to its breach of implied warranties by way of the lawsuits that were filed: *Dang v. Walgreens Co. d/b/a Walgreens,* 1:22-cv-00177 (N.D. Ill.) (filed on January 11, 2022) and *Stevens v. Walgreen, Co.,* 1:21-cv-10603 (S.D. NY) (filed on December 11, 2021).

111. As an actual and proximate result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

112. Plaintiffs and the Class have sustained damages as a proximate result of the foregoing breach of implied warranties in the amount, *inter alia*, of the Products' purchase prices.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf Of The Nationwide Class)**
**(In the Alternative to Count I)**

113. Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

114. Plaintiffs bring this count on behalf of themselves and the Nationwide Class against Defendant in the alternative to Count I.

115. Plaintiffs and Class Members conferred benefits on Defendant by purchasing Defendant's Products at a premium price.

116. Defendant had knowledge of such benefits.

117.    Defendants has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members purchasing its Products. Defendant's retention of these monies under these circumstances is unjust and inequitable because Defendant falsely and misleadingly labeled its Products as "Maximum Strength" lidocaine products when it knew or should have known that those representations were false or misleading. Defendant's "Maximum Strength" misrepresentations and omissions caused injuries to Plaintiffs and Class Members because they would not have purchased (or paid a premium) for Defendant's Products had they known the true facts regarding the "Maximum Strength" claims made on the Products' labels and in Defendant's advertising.

118.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class Members for unjust enrichment, as ordered by the Court.

### COUNT IV
### FRAUD
### (On Behalf of the Nationwide Class)

119.    Plaintiffs brings this Count on behalf of themselves and the Nationwide Class against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

120.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

- **WHO:** Defendant, Walgreens Co. d/b/a Walgreens, made material misrepresentations and/or omissions of fact in its labeling and marketing of the

Products by representing that the Products are "Maximum Strength" lidocaine products.

- **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiffs and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

- **WHEN:** Defendants made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

- **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. Defendant's representations are written with bold lettering with white highlight in the case of the Pain Relieving Lidocaine Patches, and are written with bold lettering against a contrasting blue highlight in the case of the Pain Relieving

Cream + Lidocaine – both of which instantly catch the eye of all reasonable consumers, including Plaintiffs, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

- **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiffs and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

- **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

121.    As alleged herein, Defendant Walgreens made these material "Maximum Strength" representations and omissions in order to induce Plaintiffs and Class Members to purchase the Products.

122.    As alleged in detail herein, Walgreens knew the misrepresentations and omissions regarding the Products were false and misleading but nevertheless made such representations and omissions through the marketing, advertising and on the Products' labeling. In reliance on these representations and omissions, Plaintiffs and Class Members were induced to, and did, pay monies to purchase the Products.

123.    Had Plaintiffs and the Class known the truth about the Products, they would not have purchased the Products.

124.    As a proximate result of the fraudulent conduct of Defendant, Walgreens, Plaintiffs and Class Members paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## COUNT V
## <u>VIOLATION OF STATE CONSUMER FRAUD ACTS</u>
### (On Behalf Of The Consumer Fraud Multi-State Class)

125.    Plaintiff Acosta-Aguayo repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

126.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[8] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

---

[8] The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce within the State of Illinois. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo.

127.    Defendant intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

128.    Had the truth been known, Plaintiffs and other Consumer Fraud Multi-State Class Members would not have purchased Defendant's Products or would not have paid as much for the Products.

129.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

130.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT VI
## <u>VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW</u>
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of the California Subclass)

131.    Plaintiff Dang brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

132.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

---

Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS. STAT. § 100.18, et seq.).

133.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

134.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to its "Maximum Strength" representations and omissions on the Products' labeling and advertising misled consumers acting reasonably.

135.    Plaintiff Dang and California Subclass Members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased the Defendant's Products in reliance Defendant's false and misleading "Maximum Strength" lidocaine labeling claims as alleged herein.

136.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

137.    Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

138.    As a result, Plaintiff Dang and the California Subclass are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

139.    Plaintiff Dang and the California Subclass were damaged because they would not have purchased (or paid a premium for) Defendant's Products had they known the true facts regarding the "Maximum Strength" lidocaine representations contained on the front label of the Products.

## COUNT VII
## <u>VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW</u>
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of the California Subclass)

140.    Plaintiff Dang brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

141.    Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

142.    Defendant violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count VI, above.

143.    Defendant's conduct, described herein, violated the "unfair" prong of the UCL because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

144.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the FAL.

145.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

146.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL.

147.     A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth herein, Defendant's claims relating strength of the Lidocaine on the Products' labeling were false and the continued production of the Products despite making the false "Maximum Strength" representations which are likely to mislead or deceive the public.

148.     Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) and therefore this conduct was false and misleading and "fraudulent" under the UCL.

149.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

150.     Defendant's conduct caused substantial injury to Plaintiff Dang and the other Class Members. Plaintiff Dang has suffered injury in fact as a result of Defendant's unlawful conduct. Plaintiff Dang and California Subclass Members were damaged because they would not have purchased (or paid a premium for) Defendant's Products had they known the true facts regarding Defendant's "Maximum Strength" representations and omissions.

151.     In accordance with Bus. & Prof. Code § 17203, Plaintiff Dang seeks an order requiring Defendant to commence a corrective advertising campaign.

152.     Plaintiff Dang and the California Subclass also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT VIII**
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Subclass)**

32

153.    Plaintiff Dang brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

154.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

155.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff Dang and Class Members, and violated and continue to violate the following sections of the CLRA:

        a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

        b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

        c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

        d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

156.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

157.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

158.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff Dang provided a letter to Defendant on January 12, 2022, concurrent with the filing of the original Class Action

Complaint, with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. Since Defendant did not thereafter correct its business practices, Plaintiff Dang now brings claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

159.     Pursuant to California Civil Code § 1780, Plaintiff Dang seeks injunctive relief, monetary damages, treble damages, restitution, his reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT IX
## VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
### (On Behalf of the Illinois Subclass)

160.     Plaintiff Acosta-Aguayo brings this count on behalf of herself and the Illinois Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

161.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

162.     Defendant's conduct in misrepresenting the benefits of its Products constitute the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

163.     Defendant intended that Plaintiff Acosta-Aguayo and the Illinois Class Members would rely on their misrepresentations.

164. Defendant's misrepresentations are material because they concern the type of information upon which a reasonable consumer would be expected to rely in making a decision whether to purchase the Products.

165. Because Defendant is in the business of selling medicinal consumer good products, like the Products alleged herein, Defendant committed the unfair and deceptive acts in the conduct of their trade and commerce.

166. Defendant's practice of misrepresenting the Products is also unfair because it offends public policy and is immoral, unethical, and unscrupulous because Illinois consumers are being misled about the very efficacy and purpose of the product. Misrepresenting the Products offends the public's expectation to be told the truth about the products they are buying.

167. Defendant conduct causes substantial injury to consumers.

168. Plaintiff Acosta-Aguayo and Illinois Class Members were deceived by the misleading labeling and advertising of the Products and suffered economic damages as a proximate result of Defendants unlawful conduct as alleged herein, including the difference between the actual value of the Products and the value of the Products if they had been as represented.

169. Had the truth been known, Plaintiff Acosta-Aguayo and other Illinois Class Members would not have purchased Defendant's Products, or would not have paid as much for the Products.

170. Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

171. Plaintiff Acosta-Aguayo also seeks to enjoin Defendant's ongoing deceptive practices relating to their claims on the Product's labels and advertising.

## COUNT X
## <u>VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT</u>
### <u>ILCS §§ 510/2, et seq.</u>
### (On Behalf of the Illinois Subclass)

172.     Plaintiff Acosta-Aguayo repeats and realleges all proceeding factual allegations above as if fully set forth herein.

173.     Plaintiff Acosta-Aguayo brings this claim on behalf of herself and the Illinois Subclass for violations of the Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, et seq.

174.     Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

175.     Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), including:

- Defendant represented to Plaintiff Acosta-Aguayo and the Illinois Subclass that the Products had approval or characteristics that they did not have;

- Defendant represented to Plaintiff Acosta-Aguayo and the Illinois Subclass that the Products were of a particular standard, quality, or grade when they were actually of another;

- Defendant advertised to Plaintiff Acosta-Aguayo and the Illinois Subclass goods with intent not to sell them as advertised;

- Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

- Defendant represented that consumers' purchases of the Products conferred or involved rights that the transactions did not have or involve.

176. As described herein, Defendant repeatedly advertised, both on the Products' labels and on its website, among other items, that the Products were "Maximum Strength" lidocaine products.

177. Contrary to the "Maximum Strength" representations, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

178. Defendant had exclusive knowledge of material facts concerning the misleading nature of the Products.

179. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

180. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Acosta-Aguayo and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

181. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Acosta-Aguayo and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating damages caused by the Products.

182. Plaintiff Acosta-Aguayo and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class Members;

b.  For an order declaring that Defendant's conduct violated the statutes referenced herein;

c.  For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

d.  For statutory and compensatory damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For injunctive relief as pleaded or as the Court may deem proper;

g.  For an order of restitution and all other forms of equitable monetary relief;

h.  For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit;

i.  Damages in an amount to be determined at trial; and

j.  For such other and further relief as the Court may deem proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated: April 19, 2022              Respectfully submitted,

                               */s/ Kevin Laukaitis*

Kevin Laukaitis*

Jonathan Shub*

**SHUB LAW FIRM LLC**

134 Kings Highway E, 2nd Floor

Haddonfield, NJ 08033

Tel: 856-772-7200

Fax: 856-210-9088

klaukaitis@shublawyers.com

jshub@shublawyers.com

Melissa K. Sims (6231297)

**MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN PLLC**

111 West Jackson Boulevard, Suite 1700

Chicago, IL 60604

Tel: (815) 878-4674

msims@milberg.com

Nick Suciu III*

**MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN PLLC**

6905 Telegraph Rd., Suite 115

Bloomfield Hills, MI 48301

Tel: (313) 303-3472

nsuciu@milberg.com

Russell Busch (6329500)

**MILBERG COLEMAN BRYSON**

**PHILLIPS GROSSMAN PLLC**

800 S. Gay Street, Suite 1100

Knoxville, TN 37929

Tel: (630) 796-0903

Fax: (865) 522-0049

nsuciu@milberg.com

rbusch@milberg.com

Charles E. Schaffer**

39

David C. Magagna Jr.**
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

* Admitted to the General Bar
**_Pro Hac Vice_ Application Forthcoming

_Attorneys for Plaintiffs and Putative Class Members_