## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TAM DANG YASMINE ACOSTA-AGUAYO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO. d/b/a WALGREENS,<br><br>Defendant. | Case No. 22-cv-00177<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this putative class action against Defendant Walgreens alleging that three of its pain-relieving products mislead consumers because the products' front labels state that they are "Maximum Strength" lidocaine products. Plaintiffs filed a ten-count First Amended Class Action Complaint and seek to represent a nationwide class and state subclasses. Defendant has moved to dismiss Plaintiffs' complaint in its entirety. For the reasons stated herein, Defendant's Motion to Dismiss [27] is granted in part and denied in part.

### I.   Background

This Court accepts as true the following facts from the operative complaint (Dkt. 22 "Compl."). *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

In their First Amended Class Action Complaint, Plaintiffs allege that Defendant offers over-the-counter lidocaine products including a range of external pain-relieving patches and creams for pain associated with or caused by ailments such as arthritis,

backache, muscle strains, sprains, and bruises. Compl. [22] ¶ 1. The active ingredient in Defendant's Products, lidocaine, is a local anesthetic medicine that treats body soreness and pain. *Id.* ¶¶ 19–21. The three products at issue are: Pain Relieving Lidocaine Patch, Assorted Sizes Pain Relieving Lidocaine Patches, and Pain-Relieving Cream + Lidocaine (collectively, the "Products"). *Id.* ¶ 2. Defendant sells the Products in all 50 states in their brick-and mortar stores and through their online store. *Id.* ¶ 22.

Plaintiffs allege that consumers consider dose strength an important factor when purchasing pain-relieving products. *Id.* ¶ 4. Defendant takes advantage of this by touting on the front of its Products' labels that the Products are "Maximum Strength" lidocaine products. *Id.* ¶ 5. According to Plaintiffs, Defendant makes this "Maximum Strength" representation in a knowingly false and deceptive manner because Defendant's Products contain only 4% lidocaine, and its competitors offer similar prescription patches that contain 5% lidocaine and an over-the-counter cream product that contains 5% lidocaine. *Id.* ¶ 7. As the complaint alleges, because consumers can obtain a stronger dose comparable lidocaine product in the market, Defendant's Products are not in fact "Maximum Strength" lidocaine products. *Id.* ¶¶ 31–32.

Plaintiffs allege that, because of Defendant's misleading labeling, reasonable consumers like them reasonably believe that they are purchasing a lidocaine product at maximum strength—that is, the highest dosage they can buy. *Id.* ¶ 9. Plaintiffs and Class Members would not have purchased the Products or would have not paid

as much for them had they known the truth about the advertised Products. *Id*. ¶ 40. Plaintiffs claim that Defendant's mislabeling constitutes a pattern of unlawful and unfair business practices that deceives and harms consumers and the public. *Id*. ¶ 10.

In this lawsuit, Plaintiffs seek to represent four classes. The putative nationwide class comprises:

> All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

*Id*. ¶ 70. Plaintiffs also seek to represent a consumer fraud multi-State class, an Illinois subclass, and a California subclass. *Id*.

Plaintiffs bring the following claims against Defendant: breach of express warranties (Count I), breach of implied warranty (Count II), unjust enrichment (Count III), fraud (Count IV), violation of consumer fraud acts (Count V), violation of California false advertising law (FAL) (Count VI), violation of California unfair competition law (UCL) (Count VII), violation of California Consumer Legal Remedies Act (CLRA) (Count VIII), violation of Illinois Consumer Fraud Act (ICFA) (Count IX), and violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (Count X).

## II.    Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy*

3

*Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

For fraud claims, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). The plaintiff must "plead with particularity the circumstances

4

constituting fraud" and allege the "who, what, when, where, and how" of the alleged conduct. *Id*.

Finally, where a defendant asserts a facial challenge to subject matter jurisdiction and moves to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court applies *Twombly-Iqbal's* "'plausibility' requirement." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). In assessing whether a plaintiff has established standing, the Court accepts as true "all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 381–82 (7th Cir. 2020).

## III. Analysis

Defendant argues that: (1) Plaintiffs failed to plausibly allege that the product labels are misleading; (2) Plaintiffs lack standing because they failed to plead that they purchased all three products; (3) Plaintiffs failed to satisfy the pre-suit notice requirement for their state law warranty claims; (4) the ICFA claim is conclusory; (5) the common law fraud claim is insufficiently pled; (5) Plaintiffs do not have standing to bring claims under other states' laws; (6) the unjust enrichment claim must be dismissed along with the other claims; and (7) Plaintiffs do not have standing to seek injunctive relief.

### A. Plaintiffs failed to plead that they purchased all three products.

The Court begins with Defendant's argument that, although Plaintiffs' complaint alleges deceptive labeling of three products (two Patch Products and one Cream Product), Plaintiffs only claim to have purchased one of the Patch products (the Pain-

5

Relieving Lidocaine Patch), thus undermining Plaintiffs' standing as to the two products they did not buy. Plaintiffs concede that they do not allege purchasing either the Assorted Sizes Patches or the Cream Product. Still, they urge the Court defer this issue until the class certification stage.

The doctrine of standing comes from Article III of the Constitution and in this context is a "short-hand term for the right to seek judicial relief for an alleged injury." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). A plaintiff must show that she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020). Generally, "[p]laintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products." *Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021); *see also Brodsky v. Aldi Inc.*, No. 20 C 7632, 2021 WL 4439304, at *3 (N.D. Ill. Sept. 28, 2021) (plaintiffs lacked standing to sue based on a product they did not purchase in a consumer protection case).

As the parties acknowledge, courts in this circuit have taken different approaches to standing when a case involves substantially similar products. *Compare Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (describing the majority approach in the Northern District of Illinois to this standing issue) *with Curtis v. 7-Eleven, Inc.*, No. 21-CV-6079, 2022 WL 4182384, at *8 (N.D. Ill. Sept. 13, 2022) ("Courts around the country have recognized a named plaintiff's standing to

6

represent a putative class of purchasers who bought substantially similar products.") *and Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 673095, at *4 (S.D. Ill. Mar. 7, 2022) (allowing the plaintiff to pursue claims even though he did not purchase all of the Kroger-brand coffee products at issue in the complaint). This Court adopts the latter approach here.

In Plaintiffs' complaint, the images of the products (Compl. at pp. 7–8) (of which Defendant asks the Court to take judicial notice (Dkt. 28 at 18) demonstrate that the two Patch products are substantially similar—in the colors of the packages and text, the images displayed, the text style and text descriptions in the bullet points, and the shape and size of the packaging. In this respect, the Court agrees with Plaintiffs that they can represent class members for the patch product that they did not specifically purchase "because the products at issue and misrepresentations themselves are nearly identical." (Dkt. 31 at 18). However the images of the Cream as compared to the Patch products demonstrates that these products are not substantially similar. The front labels are different in a number of ways, including the colors, images displayed (or not), product descriptions, and the shape and size of the packaging. The text in the bullet points is different, as well as the comparison text bubble on each label. Plaintiffs do not otherwise explain why the Cream label is substantially similar to the Patch labels, and thus fail to persuade on this point.

Therefore, Plaintiffs can pursue their claims for the Pain-Relieving Lidocaine Patch and the Assorted Sizes Pain Relieving Lidocaine Patches, but not for the Cream. Plaintiffs' allegations about the cream are dismissed.

**B. Plaintiffs sufficiently pled that the product labels are misleading.**

Plaintiffs claim that the Products' "Maximum Strength" label deceives reasonable consumers because the label omits the fact that other prescription products available in the market "contain a higher percentage of lidocaine (i.e. 5%)," thus causing Plaintiffs to believe that the Products contain the highest percentage of lidocaine on the market. Compl. ¶ 29. Defendant contends that "[n]o reasonable consumer purchasing one of the Products would read 'Maximum Strength' on the labels to *literally* mean that the Products contain the maximum amount of lidocaine that a person could *ever* obtain anywhere." (Dkt. 28 at 16).

Plaintiffs allege that Defendant violated the ICFA, 815 Ill. Comp. Stat. 505/2, and other consumer protection acts. The parties agree that the same standard applies to claims under the ICFA, UCL, FAL, and CLRA: whether a reasonable consumer, acting reasonably under the circumstances, would be misled by the alleged conduct. Defendant argues that Plaintiffs fails to allege a requisite deceptive practice under these acts.

ICFA is "a regulatory and remedial statute intended to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 644, 646 (7th Cir. 2019) (cleaned up). To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v.*

*Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quotation omitted). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). Because courts take a "practical and fact-intensive approach to consumer behavior," whether reasonable consumers would interpret a label is usually a question of fact not resolved on a motion to dismiss. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478, 483 (7th Cir. 2020). On the other hand, if a plaintiff's claim is based on an "unreasonable or fanciful interpretations of labels or other advertising," dismissal on the pleadings may be proper. *Id.* at 477.

According to Defendant, a reasonable consumer would not believe the phrase "Maximum Strength" means that that no other product—prescription or otherwise—contains more lidocaine. Defendant challenges Plaintiffs' assumption that a reasonable consumer shopping for over the counter ("OTC") pain relief options would equate off-the-shelf products with prescription-strength options. Plaintiffs respond that they plausibly alleged that in labeling its Products, Defendant deceived reasonable customers into believing that they are purchasing lidocaine products with the "Maximum Strength" to relieve their pain, even though the market offers higher strength comparable lidocaine products. While a reasonable consumer likely understands the difference between over the counter and prescription drugs, a

9

reasonable consumer would not necessarily understand the "Maximum Strength" on the Product's label to exclude comparable prescription medication. In addition, in their response, Plaintiffs state that Defendant's Products "contain only 4% lidocaine, while similar products *both over-the-counter [] and prescription* contain 5% lidocaine." (Dkt. 31 at 8, emphasis added).[1] Reading the phrase "Maximum Strength" to mean the maximum strength of lidocaine available generally is not an "unreasonable or fanciful interpretation[]" of the Product's label. *Bell*, 982 F.3d at 477. Thus the Court finds that Plaintiffs' claim that Defendant deceived customers is plausible.

Nevertheless Defendant challenges the plausibility by asserting that "[f]our percent lidocaine is [] the maximum concentration permitted [by the FDA] in non-prescription external analgesics." (Dkt. 28 at 19). In other words, according to Defendant, its label is accurate and there is no way the product could have more lidocaine concentration. Yet Defendant does not argue that a reasonable consumer would know this fact.[2] And this argument does not foreclose Plaintiffs' claim because "[a] label is deceptive if it is likely to mislead a reasonable consumer in a material

---

[1] The paragraph in the operative complaint cited by Plaintiffs to support this, Compl. ¶ 7, alleges that similar prescription patches contain 5% lidocaine, and for the cream, similar products contain 5% lidocaine and are also available over the counter. At this pleading stage, the Court finds Plaintiffs have raised a reasonable inference that for the Patch Products, similar 5% lidocaine OTC products are available. Whether Plaintiffs can prove this is a matter for another day.

[2] In *Bober*, as Defendant points out, the Seventh Circuit observed, in discussing a prescription and OTC medicine, that "[t]he drugs are approved for very different maladies, went through different approval processes, and are sold in different ways." 246 F.3d at 938. But the claims in *Bober* were not the same as those here. And that case did not hold that a reasonable consumer shopping for medication would interpret the phrase "Maximum Strength" to be limited to only OTC medicine.

respect, even if it is not literally false." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020).

Moreover, *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901 (N.D. Cal. 2021), a case also involving lidocaine patches, supports Plaintiffs' position. In that case, the court concluded that the plaintiff stated a claim under the UCL or FAL by alleging that defendants' advertising and marketing is likely to deceive a reasonable consumer to believe, among other things, that Defendants' patches offer 'the maximum amount of lidocaine available in patch form.'" *Id*. at 922. *Scilex* is not binding on this Court and Defendant points out some distinguishing facts in that case. Nevertheless, it is instructive as it involved lidocaine patches and claims at issue here, the UCL and FAL.[3]

In sum, the Court concludes that this case requires factual development to determine how reasonable consumers would interpret Products' label. It therefore declines to find at this stage that the label was not misleading as a matter of law.

---

[3] Similarly, the Court finds *Stevens v. Walgreen* persuasive. In August 2022, the court in the Southern District of New York issued its opinion ruling on Walgreen's motion to dismiss in *Stevens v. Walgreen*. *See* Dkt. 33. This Court agrees with Defendant that this case and *Stevens* are not identical, and that opinion is not controlling. However as it involved some of the same issues here, it provides further support for this Court's conclusion about the allegations regarding the patch product labels. The *Stevens* court concluded that "it is plausible that a reasonable consumer would understand the patches to contain and deliver the maximum amount of lidocaine available in patch form, and the complaint raises a plausible inference that that is not the case, because there are prescription-strength lidocaine patches that contain 5% lidocaine." (*Id*. Exh. A, p. 10). The court rejected defendant's argument that prescription-strength patches are not proper comparators because "such fact-intensive disputes are not appropriate for resolution at this time." *Id*. Thus the court held that plaintiff "plausibly alleged that a consumer would be misled by the packaging's representations that some patches were 'maximum strength'". (*Id*., p. 4).

As to the ICFA count, Defendant also argues that Plaintiffs fail to sufficiently plead unfair conduct. That inquiry requires a court to analyze "whether the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). Plaintiffs allege that Defendant's acts "were immoral, unethical, oppressive, and unscrupulous [and] caused substantial injury to Plaintiff and Illinois Subclass members that they could not reasonably avoid." Compl. ¶ 180. As to the first element, a practice offends public policy where "the practice violates statutory or administrative rules establishing a certain standard of conduct." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 716 (N.D. Ill. 2018). Plaintiffs do not allege that Defendant's practice violates any statutory or administrative rule, and their reliance on *Hrapoff v. Hisamitsu Am., Inc.*, No. 21-CV-01943-JST, 2022 WL 2168076 (N.D. Cal. June 16, 2022) is not helpful because that case did not address whether the plaintiff sufficiently alleged *unfair* conduct.

Plaintiffs' defense of its unfair conduct claim is otherwise undeveloped. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate."); *County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (quotation omitted).

In sum, the Court declines to dismiss the ICFA, UCL, FAL, CLRA and consumer fraud acts claims (Counts V, VI, VII, VIII, and IX) at this stage. As for the ICFA count, it survives based on deceptive conduct but not based on unfair conduct.

**C. Pre-suit notice for the warranty claims**

Defendant contends that Plaintiffs failed to satisfy the pre-suit notice requirement, a prerequisite for a warranty claim under either Illinois or California law. It is well-settled that "[b]uyers seeking to sue for breach of express or implied warranties must first notify the seller of its breach." *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1162 (N.D. Ill. 2022). The notice requirement serves to "encourage pre-suit settlement negotiations." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007).

"Under Illinois warranty law, 'direct notice is not required when . . . the seller has actual knowledge of the defect of the particular product.'" *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 393 F. Supp. 3d 745, 759 (N.D. Ill. 2019) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589 (1996)). However, "[t]he notice 'of the breach' required is not of the facts," which the seller presumably knows, "but of buyer's claim that they constitute a breach." *Connick*, 675 N.E.2d at 590. This is because "generalized knowledge is not sufficient to excuse the pre-suit notice requirement." *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *9 (N.D. Ill. Sept. 22, 2016).

Plaintiffs maintain that they gave notice as demonstrated by: (1) letters dated January 12, 2022 and March 31, 2022, (2) Defendant's actual knowledge as described

in Plaintiffs' complaint, and (3) a federal lawsuit filed in the Southern District of New York, *Stevens v. Walgreen,* No. 21-CV-10603. First, the January 12, 2022 and March 31, 2022 letters came *after* the filing of the original complaint in this case. Merely citing to the complaint's allegations about Defendant's general knowledge (Dkt. 31 at 19) does not show that Defendant had *actual knowledge of Plaintiffs' claim. Cf. Keith v. Ferring Pharms., Inc.*, No. 15-10381, 2016 WL 5391224, at *2 (N.D. Ill. Sept. 27, 2016) (reasoning that actual knowledge existed where defendant's internal quality monitoring had revealed that certain recalled drug lots did not meet potency specifications). Next, Plaintiffs' reference to the filing of either this lawsuit or the lawsuit in New York (*see* Dkt. 31 at 19–20) would at most amount to generalized knowledge, which is not sufficient. In *Stevens*, the plaintiff is different, and the claims, mostly brought under New York law, are not identical. *See Rudy*, 583 F. Supp. 3d at 1162 (explaining that the notice requirement "would be eviscerated if a party could satisfy [it] by filing suit"); *see also Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21 CV 5516, 2022 WL 1062793, at *6 (N.D. Ill. Apr. 8, 2022) (finding that "complaints (made by people other than [plaintiff]) at best put Whole Foods on notice of problems with the product line, and didn't alert the company to plaintiff's claim").

Therefore, Plaintiffs' claims for beach of express and implied warranties (Counts I and II) are dismissed for failure to give pre-suit notice.

**D. Fraud**

Next, the Court agrees with Defendant that Plaintiffs' common fraud claim is not adequately pled. To state a claim for common-law fraud, a plaintiff must plead: "'(1)

14

a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick*, 675 N.E.2d at 591). Plaintiffs do not dispute that the heightened pleading requirement of Rule 9(b) applies.

Plaintiffs' allegations about Defendant's knowledge and intent are too conclusory to survive dismissal. *See Hauger v. Dollar Gen. Corp.*, No. 121CV01270JESJEH, 2022 WL 2532487, at *6 (C.D. Ill. July 7, 2022) (finding that plaintiff failed to sufficiently plead scienter where there were no factual details to support the allegation); *Rudy*, 583 F. Supp. 3d at 1166 (dismissing fraud claim where allegations in support of fraudulent intent were conclusory). Plaintiffs merely allege that: "Defendant was aware, or should have been aware, of the misrepresentations regarding the Products," and "Defendant made the 'Maximum Strength' representation with the intention that Plaintiffs and Class members would rely on the 'Maximum Strength' representation." Compl. ¶¶ 87, 88. Indeed in the complaint Plaintiffs even qualify their allegation about Defendant's knowledge: "[Defendant] knew *or should have known* that those representations were false or misleading." *Id.* ¶ 117 (emphasis added). This is not sufficient. *See Lederman v. Hershey Co.*, No. 21-CV-4528, 2022 WL 3573034, at *6 (N.D. Ill. Aug. 19, 2022) (dismissing plaintiff's fraud claim where plaintiff broadly

asserted that defendant had fraudulent intent without any factual allegations in support).

Further, the Court rejects Plaintiffs' argument that their fraud claim can be based on a fiduciary relationship. Plaintiffs contend that Defendant "took on this duty [to disclose] with its bold, inaccurate claims regarding the strength of its lidocaine products and others available on the market." (Dkt. 31 at 23). But Plaintiffs did not allege in their complaint that Defendant had a duty to disclose. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (stating that it is an "axiomatic rule that a plaintiff may not amend his complaint in his response brief"). Further, Plaintiffs do not allege or argue that a "fiduciary relationship" based on "a special confidence" existed between them and Defendant. *See Walker v. Bank of Am.*, No. 21-CV-03589, 2022 WL 910585, at *7 (N.D. Ill. Mar. 29, 2022). Indeed the cases cited by Plaintiffs (*see* Dkt. 31 at 23-24) do not address the situation here: a commercial transaction between retailer and a customer.

Accordingly, Plaintiffs' fraud claim is dismissed.

### E. Unjust Enrichment

In their unjust enrichment claim, Plaintiffs allege that they "conferred benefits on Defendant by purchasing Defendant's Products at a premium price," that Defendant "has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members purchasing its Products," and that this retention is unjust and inequitable because Defendant "falsely and misleadingly labeled its Products as

'Maximum Strength' lidocaine products when it knew or should have known that those representations were false or misleading." Compl. ¶¶ 115, 117. Under Illinois law an unjust enrichment claim requires allegations that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that the retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). Defendant argues that because all of Plaintiffs' other claims fail, their unjust enrichment claim likewise fails, because this claim depends on the viability of another underlying claim. But several of Plaintiffs' claims have survived the dismissal motion. To the extent Defendant relies on allegations about a contract, those are only in the warranties claims, which this Court has dismissed. Thus Plaintiffs' unjust enrichment claim (Count III) survives.

### F. Other States' Laws

Defendant argues that although Plaintiffs allege 12 statutory consumer protection claims on behalf of a multi-state class under the laws of 12 states, including California and Illinois, Plaintiffs were not personally injured in and do not reside in the other states. The Court finds that Plaintiffs may proceed with these claims beyond the pleading stage.

In *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), the Seventh Circuit distinguished the standing inquiry from "the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." *Id.* at 677. In addition, courts "in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a

nationwide class impracticable." *Flaherty v. Clinique Lab'ys LLC*, No. 1:21-CV-03447, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021); *see also Joseph v. TGI Friday's, Inc.*, No. 21-CV-1340, 2022 WL 17251277, at *9–10 (N.D. Ill. Nov. 28, 2022) (same); *Rawson v. ALDI, Inc.*, No. 21-CV-2811, 2022 WL 1556395, at *5 (N.D. Ill. May 17, 2022) ("The prevailing view, particularly recently, is that the issue is best framed through the class-certification lens, not standing."). This Court will follow that prevailing view.

For now, this Court will allow Plaintiffs to pursue their claims under the various statutory consumer protection laws. Defendant is free to raise this argument again at a later stage of litigation.

### G. Injunctive Relief

Finally, Defendant argues that Plaintiffs do not have standing to seek injunctive relief and equitable remedies are unavailable. To have standing to obtain injunctive relief, the complaint must indicate a likelihood of *future injury*. *Curtis*, 2022 WL 4182384, at *11. Here Plaintiffs allege that they have "an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised." Compl. ¶ 45. Yet they do not claim that they will purchase the allegedly mislabeled Products in the future. Plaintiffs' awareness of the alleged deceptive practice undermines the notion that they will likely sustain imminent future injury. *See Rudy*, 583 F. Supp. 3d at 1167; *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *9-10 (N.D. Ill. Mar. 1, 2022) (dismissing request for injunctive relief despite plaintiff's allegation "that Kellogg's deceptive practices continue and

18

that she will purchase the Product once she can be sure that the Product packaging accurately represents the amount of strawberries inside the Product"). Thus the Court dismisses the demand for injunctive relief.

For the same reason, the Court also dismisses the UDTPA claim (Count X). *See Camasta*, 761 F.3d at 741 (dismissing UDTPA claim where the plaintiff failed to sufficiently allege that the defendant's conduct would likely cause him harm in the future). And finally, the Court agrees with Defendant that Plaintiffs fail to allege that they lack an adequate remedy at law, and so the Court dismisses their claims for restitution and disgorgement. *See Wyant v. Dude Prod., Inc.*, No. 21-CV-00682, 2022 WL 621815, at *2 (N.D. Ill. Mar. 3, 2022) (relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) and dismissing restitution and disgorgement claims).

## IV.    Conclusion

For the stated reasons, Defendant's Motion to Dismiss [27] is granted in part and denied in part. Counts I, II, IV, and X are dismissed. The remaining counts in the First Amended Class Action Complaint survive. Defendant shall answer the surviving counts by March 23, 2023.

E N T E R:

Dated: March 2, 2023

_____
MARY M. ROWLAND
United States District Judge

19